UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF NEW JERSEY, *ex rel.*, MARY WALKER and VITALIJ MYRKO,<br><br>Plaintiffs and Co-Relators,<br><br>v.<br><br>LOVING CARE AGENCY, INC.,<br><br>Defendant. | Civ. No. 2:11-06142<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiffs United States of America and the State of New Jersey (collectively the "Government") bring this action by and through their Co-Relators Mary Walker and Vitalij Myrko (individually "Walker" and "Myrko," collectively "Co-Relators") against Loving Care Agency, Inc. ("Defendant"), alleging violations of the Federal False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, and the False Claims Act of the State of New Jersey ("NJFCA"), N.J.S.A. § 2A:32C-1, *et seq.* This matter comes before the Court on Defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 9(b). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motion to dismiss is **GRANTED**, in part, and **DENIED**, in part.

## I. BACKGROUND

Defendant is a New Jersey for-profit homecare agency that is "a leading provider of home healthcare services," with its principal place of business located in Hasbrouck Heights, New Jersey. Mem. of Law in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem.") 3, ECF No. 27. Co-Relators are registered nurses and former employees of Defendant. Walker was employed by Defendant as a Nursing Clinical Field Supervisor, beginning in April 2011, and Myrko was employed under that same title from 2004 through 2012. Second Am. Compl. for False Claims Act Violations ("2d Am. Compl.") ¶¶ 14–15, 18–19, ECF No. 22. Neither Co-Relator is currently employed by Defendant. Def.'s Mem. at 3.

Walker initiated the present action by filing a complaint on October 18, 2011, in which she alleged multiple schemes undertaken by Defendant to defraud the Government by filing false claims for Medicaid reimbursement. *See* Compl. ¶¶ 34–100, ECF No. 1.

1

On January 5, 2012, Walker filed an amended complaint, introducing Myrko as Co-Relator.  *See* First Am. Compl. ¶ 9, ECF No. 2.  Thereafter, the Government requested multiple extensions of time to investigate Co-Relators' claims and ultimately moved to stay and administratively terminate the action, which this Court granted on February 13, 2013.  *See* Order, ECF No. 10.  On April 1, 2016, the Government informed the Court that it declined to intervene, thereby lifting the stay and unsealing the amended complaint.  *See* Order, ECF No. 20.  On May 25, 2016, Co-Relators filed a second amended complaint (hereinafter "the Complaint"), in which they incorporated revised facts and alleged seven fraudulent schemes undertaken by Defendant.  *See* 2d Am. Compl. at ¶¶ 65–300.

Defendant now moves to dismiss the Complaint with prejudice, arguing that Co-Relators have not pled their case with sufficient particularity and that, in the alternative, they have not stated a cause of action under the FCA.  Def.'s Mem. at 12.  Co-Relators oppose, countering that the Complaint properly alleges all claims.  *See* Pls.' Opp'n to Mot. to Dismiss ("Pls.' Opp'n") 3, ECF No. 33.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  In deciding a Rule 12(b)(6) motion, a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face."  *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility."  *Id.*

FCA claims are also subject to the heightened pleading standards set forth in Rule 9(b).  *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 301 n.9 (3d Cir. 2011) (citing *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs.*, 149 F.3d 227, 234 (3d Cir. 1998)).  Rule 9(b) provides: "In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . .  Malice, intent, knowledge and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b). The Third Circuit has adopted a more "nuanced" approach to the application of Rule 9(b),

which requires that a plaintiff "provide 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 155–58 (3d Cir. 2014). "Courts in [the District of New Jersey] have found that a plaintiff may satisfy that requirement in one of two ways: (1) 'by pleading the date, place, or time of the fraud;' or (2) using an 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Flanagan v. Bahal*, No. 12-cv-2216, 2015 WL 9450826, at *3 (D.N.J. Dec. 22, 2015) (quoting *United States ex rel. Wilkins v. United Health Grp., Inc.*, No. 08-cv-3425, 2011 WL 6719139, at *2 (D.N.J. Dec. 20, 2011) (on remand from the Third Circuit) (citation omitted)). Notably, however, this approach does not require "'that a plaintiff [] identify a specific claim for payment *at the pleading stage* of the case to state a claim for relief.'" *Id*. at 156–57 (quoting *Wilkins*, 659 F.3d at 308) (emphasis original).

### III. DISCUSSION

Co-Relators allege violations of 31 U.S.C. §§ 3729(a)(1)(A) and (B), and their New Jersey counterparts N.J.S.A. §§ 2A:32C-3(a) and (b). 2d Am. Compl. at ¶¶ 320–40. "To prove a violation of § 3729(a)(1)(A) Plaintiffs must show that '(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent.'" *United States ex rel. Doe v. Heart Solution PC*, No. 14-cv-3644, 2016 WL 3647987, at *4 (D.N.J. July 8, 2016) (quoting *Wilkins*, 659 F.3d at 305). "To establish liability under § 3729(a)(1)(B), Plaintiffs must prove that the Defendants (1) made, used, or caused to be made or used, a false record or statement; (2) the Defendants knew the statement to be false; and (3) the statement was material to a false or fraudulent claim." *Id*. at *6 (citation omitted). The language in the NJFCA is nearly identical to the federal statute and thus requires the same showings noted above. *Compare* 31 U.S.C. §§ 3729(a)(1)(A)–(B) *with* N.J.S.A. §§ 2A:32C-3(a)–(b). *See also New Jersey v. Haig's Serv. Corp.*, No. 12-cv-4797, 2016 WL 4472952, at *6–7 (D.N.J. Aug. 24, 2016) (noting the similarity of language between the federal FCA and the NJFCA and recognizing identical elements) (citations omitted).

"There are two categories of false claims under the FCA: a factually false claim and a legally false claim." *Wilkins*, 659 F.3d at 305 (citation omitted). "A claim is factually false when the claimant misrepresents what goods or services that it provided to the Government and a claim is legally false when the claimant knowingly falsely certifies that it has complied with a statute or regulation the compliance with which is a condition for Government payment." *Id*.

"A legally false FCA claim is based on a false certification theory of liability," of which there are two types: express and implied. *See id*. (internal quotation and citation omitted). An express false certification occurs when an entity falsely certifies to the Government that it complied with statutory and regulatory preconditions of payment when

it in fact has not complied. *See id*. An implied false certification occurs when an entity submits a claim for payment to the Government "without disclosing that it violated regulations that affected its eligibility for payment." *See id*.

The Complaint alleges facts that form seven schemes undertaken by Defendant, which constitute both factually and legally false claims to the Government for payment of Medicaid services rendered:

(1) **Scheme A**: claims for personal care assistance ("PCA") services that were never performed (so called "ghost services"), *see* 2d Am. Compl. at ¶¶ 65–139;
(2) **Scheme B**: claims for PCA services that were not properly supervised by a registered nurse, *see id*. at ¶¶ 140–91;
(3) **Scheme C**: claims for PCA services performed by unqualified individuals, *see id*. at ¶¶ 192–210;
(4) **Scheme D**: claims for PCA services provided to ineligible beneficiaries or claims for ineligible services, *see id*. at ¶¶ 211–27;
(5) **Scheme E**: claims for PCA services that were medically unnecessary, *see id*. at ¶¶ 228–55;
(6) **Scheme F**: claims for PCA services provided to family members, *see id*. at ¶¶ 256–68; and
(7) **Scheme G**: claims for nursing services that were never performed, *see id*. at ¶¶ 269–300.

Defendant moves to dismiss all of the above on multiple grounds, including: (1) the Complaint lacks specific allegations of misconduct prior to 2010 and after January 2012, *see* Def.'s Mem. at 12–14; (2) the Complaint lacks the requisite particularity to plausibly infer that Defendant knowingly made false claims for services not performed or that failed to conform with New Jersey regulations, *see id*. at 12–22; (3) the Complaint fails to allege violations that were "material" to the Government's decision to pay concerning schemes B and C, *see id*. at 22–26; and (4) the Complaint lacks the requisite particularity to support medically unnecessary allegations concerning schemes D and E, *see id*. at 26–30. The Court will address the sufficiency of the allegations for each scheme in turn.

### A. Ghost Personal Care Assistance ("PCA") Services

Co-Relators allege that Defendant "knowingly submitted Claim Forms to New Jersey Medicaid for personal care assistance services for days and times when those services were not rendered." 2d Am. Compl. at ¶ 65. Co-Relators assert that they have first-hand knowledge of these ghost services because, as Defendant's employees, they "were charged with traveling to patients' homes to supervise [Defendant's] aides as they performed PCA services for Medicaid patients." *See id*. at ¶ 66.

While assigned to Defendant's Union County branch, Walker submits that she would perform "spot checks" on the aides she oversaw, during which time she gained personal knowledge of claims for ghost PCA services. *See id*. at ¶ 68. The Complaint lists twenty-seven specific examples of such spot checks where services were not performed

from October through December 2011, noting exact dates and names of the aides and patients.[1]  *See id*. at ¶¶ 69–95.

On April 5, 2012, Walker claims to have spoken with a patient who detailed to her an ongoing conspiracy that dated back several years prior to 2012: a so called "High Rise" scheme involving aides and patients throughout an apartment complex in Maplewood, New Jersey.  The patient explained that aides agreed to perform ineligible housekeeping services for patients in exchange for signing timesheets that indicated the performance of PCA services.  *See id*. at ¶¶ 96–105.

Walker also asserts that branch manager Rose Palumbo learned that many aides were engaged in ghost services during an internal investigation.  *See id*. at ¶¶ 109–12.  The Complaint alleges that Palumbo regularly shared her findings with Defendant's VP of Home and Community Based Services, its Chief Compliance Officer and other senior management.  *See id*. at ¶ 114.  Palumbo showed Walker a spreadsheet, which listed dozens of instances of ghost services.  *See id*. at ¶ 115.  Palumbo also purportedly told Walker that Defendant's management had not been self-reporting—*i.e.*, refunding Medicaid payments to the Government—despite the extensive findings of ghost services.  *See id*. at ¶ 116.  In early 2012, Palumbo expressed that 50% of the PCA services billed by Defendant were fraudulent.  *See id*. at ¶ 120.

Walker also learned of ghost PCA services being performed in the Middlesex County branch, providing multiple specific examples of aides that did not perform services and another "High Rise" scheme in New Brunswick, New Jersey.  *See id*. at ¶¶ 121–29.  Walker claims that she advised the branch directors of her findings.  *See id*. at ¶ 130.  Co-Relators contend that Defendant submitted claims for payment to the Government for these and other ghost PCA services.  *See id*. at ¶¶ 138–39.

Defendant argues that Co-Relators' claims failed to adequately plead that Defendant knowingly submitted false or fraudulent claims to Medicaid, which is a fatal deficiency of the Complaint for all of Co-Relators' allegations.  *See* Def.'s Mem. at 14–15.  Defendant submits that the list of examples (and all other examples) are factually insufficient because the Complaint does not allege that Walker "contemporaneously informed anyone . . . responsible for the company's submission of claims to Medicaid that it could not rely on aides' or nurses' time sheets and patient logs when submitting reimbursement claims to Medicaid."  *See id*. at 15–16.  Even assuming the facts alleged above, Defendant maintains that "the Complaint is devoid of concrete factual allegations sufficient to raise a plausible inference" that Defendant knew or was recklessly indifferent to the possibility of billing Medicaid for ghost PCA services.  *See id*. at 16; *see also* Reply in Further Supp. of Def.'s Mot. to Dismiss 4–6, Sept. 13, 2016, ECF No. 34.

Defendant overstates what the FCA requires at the pleading stage.  The FCA requires only a showing that leads to a strong inference that Defendant knew of the ghost

---

[1] Patients' names are noted in the Complaint with initials, presumably to preserve their anonymity.  The Court assumes that the patients' identity is known to Co-Relators and that they may be used as witnesses during later stages of litigation.

PCA services scheme.  *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge and other conditions of a person's mind may be alleged generally."); *Foglia*, 754 F.3d at 157–58. Furthermore, Co-Relators are not required to provide specific claims submitted to the Government at the pleading stage; rather, they are only required to allege facts that allow the Court to plausibly infer that fraudulent claims were submitted.  *See id.*; *see also Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (finding that "plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs" at the Rule 9(b) pleading stage).

Co-Relators have sufficiently pled that Defendant knew of or recklessly disregarded the factual allegations set forth in Scheme A.  Specifically, the Complaint plainly states that a branch manager informed a corporate vice president and the Chief Compliance Officer, among other senior managers, of the scheme.  *See* 2d Am. Compl. at ¶ 114.  The facts alleged more than satisfy the particularity required by Rule 9(b).[2]  *See United States ex rel. Silver v. Omnicare, Inc.*, No. 11-cv-1326, 2014 WL 4827410, at *4 (D.N.J. Sept. 29, 2014) (finding that plaintiff is not required to plead specifics of the actual false claims, including individuals involved in billing, at the Rule 9(b) stage).  Accordingly, Defendant's motion to dismiss the counts as related to the facts alleged under Scheme A is **DENIED**.

### B. Improper Supervision

Co-Relators next allege that Defendant "did not have measures in place to ensure that aides [performing PCA services] were supervised by Registered Nurses," as required by New Jersey regulations, and that Defendant actually taught "supervising nurses to forge paperwork as if a supervised visit had occurred when, in reality, it had not."  *See* 2d Am. Compl. at ¶¶ 145–46.  Co-Relators allege a scheme where aides signed blank evaluation forms to be used by supervising nurses, who would back-date the forms to make it appear that supervisory visits had occurred when they had not.  *See id.* at ¶¶ 167–73.  Co-Relator Walker observed this practice and Co-Relator Myrko admits to personally participating in the scheme.  *See id.* at ¶¶ 158–60, 169–71, 175–81.  The Complaint also lists ten other registered nurses who purportedly falsified evaluation forms.  *See id.* at ¶ 174.  The Complaint also lists thirty-six patients who received improperly supervised services, complete with the location, start date of care, supervising nurse of record and number of hours billed.  *See id.* at ¶ 184.

Defendant raises similar arguments to the ones submitted in defense of the ghost PCA services scheme, contending that the Complaint lacks particularity and that, even if true, it does not plausibly allege that anyone responsible for submitting claims to the Government knew of the scheme.  *See* Def.'s Mem. at 17.  Additionally, Defendants argue that Co-Relators failed to allege that the failure to supervise was a material precondition of payment.  *See id.* at 24–26.

Defendant's arguments concerning particularity and knowledge are equally infirm with respect to Scheme B as they are to Scheme A.  The Complaint lists specific examples

---

[2] The Court will address Defendant's arguments concerning statute of limitations, retroactivity and other time constraints of the Complaint after it addresses each scheme.

observed or actions taken by Co-Relators that form the factual basis for a systemic and longstanding scheme to forge evaluation forms. *See* 2d Am. Compl. at ¶¶ 140–91. The Complaint also alleges that Defendant taught its supervising nurses to forge paperwork and that upper level management knew of or deliberately disregarded the scheme. *See id.* ¶¶ 146, 173. Knowledge is sufficiently pled. *See Foglia*, 754 F.3d at 157–58.

Defendant's argument concerning materiality is also unavailing. New Jersey regulations define PCA services as "health related tasks performed by a qualified individual in a beneficiary's home, *under the supervision of a registered nurse*, as certified by a physician in accordance with a beneficiary's written plan of care." N.J.A.C. 10:60-1.2 (emphasis added); *see also* N.J.A.C. 10:60-3.1. The duties of the supervising nurse are expressly provided in the regulations and include a minimum of a patient visit every sixty days and a patient reassessment every six months. *See* N.J.A.C. 10:60-3.5. Co-Relators identify these regulations in the Complaint. *See* 2d Am. Compl. at ¶¶ 140–44.

Defendant attempts to color Co-Relators' allegations as "rigid definitional syllogism," whereby the slightest oversight by a supervising nurse would be considered a *per se* violation ineligible for reimbursement. *See* Def.'s Mem. at 24–25. But Co-Relators do not allege a slight oversight. They allege quite the opposite: a systematic and widespread scheme to circumvent Defendant's obligations by misrepresenting regulatory compliance to the Government. The Court finds it hard to fathom that the Government would find such blatant disregard of its regulations, if true, to be immaterial of its decision to pay Defendant. The Complaint adequately pleads a plausible set of facts where Defendant used falsified records of supervision in support of claims for payment. *See Druding v. Care Alts., Inc.*, 164 F. Supp. 3d 621, 630–31 (D.N.J. 2016) (finding that "[i]t is no great leap for the Court to infer" that purportedly legally false records could form the basis of claims for Medicare reimbursement). Accordingly, Defendant's motion to dismiss the counts as related to the facts alleged under Scheme B is **DENIED**.

### C. Performance by Unqualified Individuals

Co-Relators also allege that the aides employed by Defendant to perform PCA services did not meet the regulatory definition of a "personal care assistant" because Defendant's training program was a sham. *See* 2d Am. Compl. at ¶¶192–95. A personal care assistant is "a person who: (1) successfully completed a training program in personal care services and is certified . . . ; (2) successfully completes a minimum of 12 hours in-service education per year . . . ; (3) is supervised by a registered professional nurse . . . ." *See* N.J.A.C. 10:60-1.2. A personal care assistant is a "qualified individual" eligible to perform PCA services in a beneficiary's home. *See id.*

Co-Relators submit that they witnessed firsthand such fraudulent conduct where aides were provided answers to qualification tests and instructed to "not get 100% of the answers correct." *See id.* at ¶¶ 196–97. In addition to tests, aides were required to perform a demonstration of PCA skills, but Co-Relator Myrko maintains that he never saw a nurse give a competency evaluation in his many years of employment. *See id.* at ¶ 199. Co-

7

Relators allege that nurses fraudulently signed documentation regarding in-service education, despite knowing that such training did not occur. *See id*. at ¶¶ 200–03.

Defendant makes the same arguments against Scheme C as it does against Scheme B. While not as extensive as Scheme B, the facts are alleged with sufficient particularity because they identify specific courses of conduct that, if true, would amount to regulatory violations. The Complaint also adequately alleges knowledge by identifying that, at a minimum, Defendant's Middlesex County branch directors personally engaged in the fraudulent training programs. *See id*. at ¶ 203. Finally, similar to the nurse supervision requirement, the Court finds it hard to fathom that the Government would find such a systematic and widespread scheme to circumvent Defendant's regulatory obligations to be immaterial of its decision to pay. The Complaint adequately pleads a plausible set of facts where Defendant used falsified records to certify that aides were properly trained and educated in support of claims for Medicaid reimbursement. *See Foglia*, 754 F.3d at 157–58; *Druding*, F. Supp. 3d at 630–31. Accordingly, Defendant's motion to dismiss the counts as related to the facts alleged under Scheme C is **DENIED**.

### D. Ineligible Beneficiaries and Ineligible Services

Co-Relators next allege that Defendant made claims for Medicaid reimbursement concerning services rendered to individuals "who were not in need of either skilled nursing care or [PCA] services," in violation of N.J.C.A. 10:60-3.4. *See* 2d Am. Compl. at ¶ 212. The Complaint lists multiple examples of specific patients that Walker personally visited or examined and determined were not in need of such services. *See id*. at ¶¶ 214–20. Co-Relators also submit that they were personally asked to certify as eligible so called "joke cases," which "involved healthy and able bodied individuals who did not need genuine services, but instead, would exploit the PCA system for personal valets, maids, and housekeepers." *See id*. at ¶ 221. The previously identified "High Rise" schemes also provide examples of ineligible patients and services. *See id*. at ¶ 222; *supra* III.A.

Defendant argues that Co-Relators allegations are "the definition of conclusory," citing *United States ex rel. Frazier v. IASIS Healthcare Corp.*, 554 F. Supp. 2d 966 (D. Az. 2008), in support of its argument. *See* Def.'s Mem. at 28–29. The *Frazier* court applied the Ninth Circuit's understanding of Rule 9(b) particularity, which includes that the "'who, what, when, where, and how' of the misconduct must accompany allegations of fraud." *See* 554 F. Supp. 2d at 970–71 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Defendant misapplies the Ninth Circuit standard to the Third Circuit. In the Third Circuit, Co-Relators are not required to provide every detail necessary to support a finding of fault at the pleading stage. *See Omnicare*, 2014 WL 4827410, at *4 (citing *Foglia*, 754 F.3d 157–58). They are only required to "provide particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *See Foglia*, 754 F.3d 157–58 (internal quotations omitted).

Walker provided a representative set of specific individuals who she personally visited and examined, and subsequently determined were not eligible for PCA services.

8

*See* 2d Am. Compl. at ¶¶ 214–20.  Furthermore, the "High Rise" scheme, which the Court has already found to be sufficiently pled, identifies an entire apartment complex of people that received ineligible services.  *See id.* at ¶¶ 96–105.  These alleged facts, if true, establish a plausible inference that Defendant billed the Government for ineligible services.  *See Druding*, 164 F. Supp. 3d at 631.  Accordingly, Defendant's motion to dismiss the counts as related to the facts alleged under Scheme D is **DENIED**.

### E.  Medically Unnecessary PCA Services

Co-Relators also allege that Defendant billed the Government for PCA services that were medically unnecessary by fraudulently inflating the number of hours needed to provide services listed on patient assessment forms, in violation of N.J.A.C. 10:60-3.9.  *See* 2d Am. Compl. at ¶¶ 228–31.  Myrko alleges that Middlesex County nursing branch director Arlene Nemeth admitted to increasing numerous patients' hours without medically assessing whether such increases were necessary.  *See id.* at ¶ 232.  Nemeth and others also instructed Myrko in strategies to increase hours for certain services.  *See id.* at ¶¶ 233–41.  Co-Relators also allege that management arbitrarily inflated hours on submissions for approval to the Government, providing a list comparing the submitted hours to the actual hours worked by aides.  *See id.* at ¶¶ 243–47.  When she notified management, Walker was told by a corporate compliance officer and others that these issues would be handled internally.  *See id.* at ¶¶ 248–49.

Defendant argues that these allegations "are analogous to the ones that the district court found to be insufficient" in *Flanagan v. Bahal*.  *See* Def.'s Mem. at 29.  The Court disagrees.  In *Flanagan*, the court found that the allegations of medically unnecessary claims were insufficient because the relator "only provided 'a mere opportunity for fraud' and [] failed to plead sufficient facts to establish a plausible ground for relief."  *See* 2015 WL 9450826, at *5 (citing *Foglia*, 754 F.3d at 158).  That is not the case here.  Co-Relators submitted a detailed list of patients that shows the difference between the number of hours worked by the aides and the hours actually billed, clearly alleging an inflation of hours not required for the services performed.  *See* 2d Am. Compl. at ¶ 247.  If true, those examples, coupled with Myrko's personal experiences, go beyond "a mere opportunity for fraud" and form a sufficient basis for an inference that Defendant billed the Government for medically unnecessary services.  *See Druding*, 164 F. Supp. 3d at 630–31.  Accordingly, Defendant's motion to dismiss the counts as related to the facts alleged under Scheme E is **DENIED**.

### F.  PCA Services Provided to Family Members

Co-Relators next allege that Defendant submitted reimbursement claims to the Government for PCA services provided by family members of patients, in violation of N.J.A.C. 10:54-5.18(b) and N.J.A.C. 10:60-3.8.  *See* 2d Am. Compl. at ¶¶ 256–61.  Co-Relators provide two examples of instances where Myrko visited a patient and learned that the attending aide and patient were relatives.  *See id.* at ¶¶ 259–61.  These examples include approximate dates, locations, and the names of patients and aides.  If true, they form a sufficient basis for a plausible inference that, on at least two occasions, Defendant submitted claims to the Government for services performed by family members.  *See*

*Foglia*, 754 F.3d at 157–58. Accordingly, Defendant's motion to dismiss the counts as related to the facts alleged under Scheme F is **DENIED**.

### G. Ghost Nursing Services

Co-Relators also allege that Defendant submitted Medicaid claims to the Government for services provided by registered nurses, such as nursing reassessments, which were never actually rendered—*i.e.*, "ghost RN services." *See* 2d Am. Compl. at ¶¶ 269–75. Walker alleges that she personally observed a supervising nurse completing paperwork that documented performance of nursing assessments, which the Union County branch manager conceded were not performed. *See id.* at ¶¶ 280–86. The Complaint provides a list of examples where Defendant billed the Government for nursing services that were never performed, including names, locations and hours billed. *See id.* at ¶¶ 287, 291. Walker also submits that she was instructed by her nurse manager to back-date the paperwork of a nursing assessment on at least one occasion. *See id.* at ¶¶ 288–89. Myrko alleges that he was instructed by his nurse manager to skip performing nursing assessments on patients who required a small number of hours of care per week and that the requisite forms were subsequently fabricated. *See id.* at ¶ 293. For the same reasons noted above concerning ghost PCA services, *supra* III.A, the Court finds that the Complaint provides the requisite particularity concerning allegations of ghost RN services. *See Foglia*, 754 F.3d at 157–58; *Omnicare*, 2014 WL 4827410, at *4. Accordingly, Defendant's motion to dismiss the counts as related to the facts alleged under Scheme F is **DENIED**.

### H. FCA Statute of Limitations and NJFCA Retroactive Application

Finally, Defendant argues that all of Co-Relators' claims outside of the time period of 2010 to 2012 should be dismissed because the Complaint does not contain any specific allegations of misconduct that occurred during those time periods. *See* Def.'s Mem. at 12–14. Defendant also argues that any federal FCA claims prior to October 18, 2005, should be dismissed due to the six-year statute of limitations and that the NJFCA does not provide for retroactive application, which bars all NJFCA claims prior to 2008. *See id.* at 30–31.

The Complaint establishes that Myrko worked for Defendant from 2004 through 2012 in the Union County and Middlesex County offices. *Id.* at ¶ 18. Myrko submits that he "was trained in fraudulent practices designed to defraud the Government," beginning in 2004. *See id.* at ¶ 20. The Complaint contains specific allegations by Myrko that took place prior to 2010, including forgery of paperwork, fabrication of forms, and the identification of branch managers that trained him in fraudulent practices. *See id.* at ¶¶ 145–46, 176–83, 234, 240, 293. The Court is satisfied that the Complaint contains sufficient particularity concerning allegations that occurred prior to 2010. *See Flanagan*, 2015 WL 9450826, at *3 ("The Third Circuit made clear, however, that *at the pleading stage,* Rule 9(b)'s particularity requirement does not require a plaintiff to identify a specific claim for payment to state a claim for relief.") (citing *Wilkins*, 659 F.3d at 308).

Additionally, Co-Relators also submit that they have maintained relationships with "key employees" since they stopped working for Defendant and that these employees have

stated that the identified misconduct presently continues.  *See* 2d Am. Compl. at ¶ 312.  Given their employment history, the Court finds it plausible that Co-Relators have maintained relationships with individuals still employed by Defendant and that they should be afforded the opportunity to seek production of evidence through the present time in discovery.  *See Omnicare*, 2014 WL 4827410, at *4 (rejecting defendant's Rule 9(b) argument that complaint contained only generalized allegations because it lacked specific dates, among other details).

Defendant correctly identifies a six-year statute of limitations for federal FCA claims.  31 U.S.C. § 3731(b)(1).  Thus, the Court agrees that any federal FCA claims prior to six years before the filing date of the original complaint, October 18, 2011, are time-barred.  *See Omincare*, 2014 WL 4827410, at *7–8.  Defendant also correctly identifies that the NJFCA does not apply retroactively.  *See State ex rel. Hayling v. Corr. Med. Servs., Inc.*, 28 A.3d 1246, 1250 (N.J. Super. Ct. App. Div. 2011).  All NJFCA claims prior to March 13, 2008, therefore, must be dismissed.  *Id.*  Accordingly, Defendant's motion to dismiss is **GRANTED** for all federal FCA claims prior to October 18, 2005, and all NJFCA claims prior to March 13, 2008.  The remainder of Defendant's motion to dismiss concerning claims prior to 2010 and after 2012 is **DENIED**.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **GRANTED** in part, and **DENIED** in part.  The motion to dismiss is granted with respect to all federal FCA claims prior to October 18, 2005, and all NJFCA claims prior to March 13, 2008, and they are **DISMISSED WITH PREJUDICE**.  The remainder of Defendant's motion to dismiss is denied.  An appropriate order follows.

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: December 22, 2016**